UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

INTEROP TECHNOLOGIES, LLC,

        Plaintiff,

v.

ACACIA RESEARCH CORPORATION,
INTERCARRIER COMMUNICATIONS, LLC, AND
TELECOMMUNICATIONS SYSTEMS, INC.

        Defendant.
_____/

# COMPLAINT FOR DECLARATORY JUDGMENT OF
# PATENT INVALIDITY AND NON-INFRINGEMENT

Plaintiff, Interop Technologies, LLC ("Interop" or "Plaintiff"), brings this action against Defendants, Acacia Research Corporation ("Acacia"), Intercarrier Communications, LLC ("ICC") and Telecommunications Systems, LLC ("TCS") (collectively the "Defendants"), to declare that U.S. Pat. No. 6,985,748 (the "'748 Patent") [Exhibit A] is invalid and that Interop is not infringing the '748 Patent, and states and alleges as follows:

## PARTIES

1.    Plaintiff Interop is a limited liability company with its primary place of business in the State of Florida. Interop conducts business in South Florida and in this district. Its nerve center is in Florida.

2.    Defendant TCS is the original assignee and current owner of the '748 Patent. TCS is incorporated in Delaware, has offices in Florida, and regularly conducts business in this district. Its nerve center is in Maryland.

3.    TCS was founded in 1987 and went public in 2000. It is currently traded on the NASDAQ Stock Market with the ticker symbol TSYS.

*Interop Electronics, LLC v. Acacia Corporation, et. al.*
Civil Action No. _____

4. TCS maintains technical, service, and sales offices throughout North America, and around the world including South Florida.

5. Defendant Acacia is a limited liability company organized under the laws of the State of California, with a residence in Orange County, CA and its principal place of business at: 6136 Frisco Square Boulevard, Suite 385, Frisco, TX 75034.

6. Acacia's subsidiaries partner with inventors and patent owners, license patents to corporate users, and share the revenue. Acacia claims control of over 250 patent portfolios covering technologies used in a wide variety of industries and enforces and licenses many of its patent portfolios in the Southern District of Florida and for business transacted in the Southern District of Florida.

7. Although, Acacia transacts business throughout the U.S., its nerve center is either in California where it resides or the Eastern District of Texas, where it files most of its lawsuits.

8. Acacia is listed on the NASDAQ stock exchange with the ticker symbol ACTG.

9. ICC is a limited liability company alter-ego of Acacia organized under the laws of Texas, with its claimed principal place of business at: 6136 Frisco Square Blvd., Ste. 385, Frisco, TX 75034.

10. ICC is insufficiently capitalized and Acacia funds ICC and controls ICC in furtherance of a conspiracy (the "Shakedown") which it has orchestrated in concert with TCS.

11. ICC is the alter-ego of Acacia and shares Acacia's nerve center.

12. Acacia and TCS intend to directly financially benefit from the Shakedown through money generated by settlement of bogus claims of infringement of TCS's '748 Patent.

13. Acacia is also vicariously liable for any wrongful action taken by ICC as Acacia has the ability to control ICC and directly financial gains from ICC's wrongful conduct.

ASSOULINE & BERLOWE, P.A.
2700 N. Military Trail, Suite 150, Boca Raton, Florida 33431 • Telephone: (561) 361-6566 • Facsimile: (561) 361-6466

*Interop Electronics, LLC v. Acacia Corporation, et. al.*
Civil Action No. _____

## JURISDICTION AND VENUE

14. This action is for declaratory judgment of patent invalidity and non-infringement.

15. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

16. This Court has personal jurisdiction over Defendants, because knowing that Interop is a Florida resident and that its principal place of business is in Florida, Defendants concertedly conspired to unlawfully accuse Interop of infringing TCS' patent knowing that Interop would be damaged in Florida by Defendants' public actions.

17. Moreover, ICC in furtherance of Acacia and TCS' Shakedown intentionally and in bad faith directed its accusations at Interop in Florida knowing that Interop's principal place of business is in Florida and those allegations would have a substantial impact and harm to Interop and Interop's business in Florida.

18. TCS and Acacia regularly transact business in this district, and have asserted the Patents in Suit in this district, and entered into licensing agreements concerning parties and or business transacted in this district.

19. TCS and ICC specifically solicited royalties and licensing agreements relating to the '748 Patent from non-parties for business transacted in the Southern District of Florida.

20. ICC reached out to Interop in Florida for purposes of soliciting royalties from Interop's SMSC 4 Series and MMSC products (collectively the "Accused Products") which ICC contends infringe TCS's patent, the '748 Patent.

21. Most of the important witnesses in this action reside in Florida.

22. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

*Interop Electronics, LLC v. Acacia Corporation, et. al.*
Civil Action No. _____

**GENERAL ALLEGATIONS FOR ALL CLAIMS**

23. Defendant TCS claims to be the owner of the '748 Patent.

24. During prosecution of the '748 Patent, TCS, Chris Knotts (the alleged inventor of the '748 Patent) and their intellectual property counsel, were aware that the concept of a look-up database or table for inter-network routing was nothing new and was taught by the prior art.

25. In fact, at the time of the application for the '748 Patent it was well known and highly desired that short message service ("SMS") messages be able to be sent inter-carrier.

26. One of the initial barriers to inter-carrier SMS was cooperation and service agreements between competing carriers, not a technological problem. In fact, it was well known before the time of the application for the '748 Patent that because of the different communication standards by competing carriers used in the U.S., lookup tables with routing information would be necessary once inter-carrier service agreements were reached.

27. For example: international inter-carrier successes in Europe and Australia; customer interest; potential for new markets; and, new SMS products motivated the U.S. carriers to cooperate.

28. Some examples of new SMS driven products that motivated competing carriers to cooperate at the time of the application for the '748 Patent included: M2M technology; downloadable ringtones; mobile games; and, availability of other standard and premium content.

29. Inphomatch, Inc., Mobileway, Inc., Zonamovil, Inc., and others ("Intercarrier Service Providers and Developers") knew long prior to the application for the '748 Patent that from end users and the international successes in other markets that new SMS products would drive U.S. carriers to cooperate to permit inter-carrier SMS.

30. The Defendants know of the Intercarrier Service Providers and Developers,

related U.S. offers for sale, marketing, and/or other public disclosures that existed more than a year prior to September 5, 2001, the date of application for the '748 Patent.

31. To preserve its unlawful patent rights and stop an *inter-partes* reexamination and other litigation from terminating the patent TCS entered into confidential settlement agreements with Widerthan Americas, Inc. ("WT") and Mobile 365, LLC ("M365") whereby TCS provided both WT and M365 with *non-exclusive* licenses in exchange for those non-exclusive licensees ceasing to pursue action to invalidate the patent.

32. The Defendants know of ic3s AG's Gucky and other services offered for sale in the U.S. more than a year prior to the application for '748 Patent.

33. Through transactions involving acquisition of VeriSign Networks and Real Networks -- Syniverse, LLC acquired WT's non-exclusive license to use and sell services that TCS once characterized as being covered by the '748 Patent.

34. Sybase, LLC also maintains a similar *non-exclusive* license with TCS through an agreement with TCS and Sybase, LLC's predecessor M365.

35. Intentionally disregarding the known and existing prior art, on or before March of 2012, TCS and Acacia conspired together and implemented a scheme (previously defined as the "Shakedown") where TCS would also grant a license to an Acacia subsidiary for purposes of initiating lawsuits against third parties.

36. The Shakedown involved Acacia financing the litigation through a newly formed subsidiary which would have no substantial assets other than a non-exclusive license, for the purpose of insulating TCS and Acacia from counterclaims, direct party discovery, equitable defenses, and creditor's claims related to the wrongful assertion of TCS's patent. The goal of the Shakedown was for TCS and Acacia to share in the profits generated through the shell

subsidiary, but to avoid any liability for that shell subsidiary's wrongful acts.

37. In furtherance of the Shakedown, Defendant ICC, a shell corporation and alter-ego fully controlled by Acacia, was established.

38. ICC on behalf of the patent holder TCS and Acacia has wrongfully accused Interop of infringing the Patents in Suit in Florida.

39. Defendants are aware that the Accused Products resell services provided by authorized licensees of the '748 Patent. Thus, Defendants are aware that TCS and its licensee's patent rights are exhausted as to those products.

40. Yet, in furtherance of Defendants' Shakedown, ICC continues to accuse Interop of infringing the '748 Patent for products which Defendants know exhausted any patent rights.

41. Internet domain name servers, network allocation tables, inter-carrier short message services, internet relay chat networks, host cloaking, and various forms of inter-network bridge/coupling/addressing technologies and other prior art (the "Prior Art") existed decades before the application for patent at issue and were well known to a person with ordinary skill in the art. The idea of an address and routing syntax table and/or database is a very basic networking concept and at the time of the application for the '748 Patent was nothing new in the art.

42. Thus, for these reasons, and others, before December 8, 2000 the idea of a database/table to store/look-up inter-network routing information for use as an "Intercarrier Messaging Distribution Center" was nothing new, and was known or obvious to a person with ordinary skill in the art.

43. Chris Knotts, the alleged inventor of the Patents in Suit, his counsel, and the others that assisted with preparation of the applications for the Patents in Suit, knew of the Prior

Art during prosecution of the Patents in Suit, but did not disclose the Prior Art to the U.S. Patent and Trademark Office ("USPTO").

44.     Defendants also now know of the above facts and Prior Art and other Prior Art, but baselessly continue to assert the Patents in Suit against Interop for the Accused Products.

## COUNT I
## DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,985,748

45.     Interop incorporates by reference and re-alleges, as if fully set forth herein, the allegations contained in Paragraphs 1 through 45, above.

46.     The '748 Patent is invalid under 35 U.S.C. § 101 et seq., and fails to meet the patentability standards under 35 U.S.C. § 112, and/or because it is anticipated by, or obvious in view of the prior art under 35 U.S.C. §§ 102 and 103.

47.     There exists a real and actual controversy between Interop and Defendants concerning the validity of the '748 Patent.

48.     Interop is entitled to a declaratory judgment that the '748 Patent is invalid.

49.     Given the prior art known to it, Defendants know or should know that the claims of the '748 Patent that Defendants asserted against Interop is invalid.

50.     Due to the exceptional circumstances of this case, the Court should award Interop its attorneys' fees pursuant to 35 U.S.C. § 285.

WHEREFORE, Interop respectfully requests this Court: i) enter a declaratory judgment and decree holding that the '748 Patent is invalid; and ii) grant such relief as is just, fair, and equitable.

## COUNT II
## DECLARATORY JUDGMENT OF NON-INFRINGMENT OF U.S. PAT. NO. 6,985,748

51.     Interop incorporates by reference and re-alleges, as if fully set forth herein, the

allegations contained in Paragraphs 1 through 45, above.

52. The Interop Products have substantial non-infringing uses.

53. Interop has not infringed and is not infringing the '748 Patent.

54. There exists a real and actual controversy between Interop and Defendants concerning the infringement of the '748 patent.

55. Interop is entitled to a declaratory judgment that it has not directly or indirectly infringed and is not infringing the '748 patent.

56. Due to the exceptional circumstances of this case, the Court should award Interop its attorneys' fees pursuant to 35 U.S.C. § 285.

WHEREFORE, Interop respectfully requests this Court: i) enter a declaratory judgment and decree holding that the '748 Patent is not infringed by Interop; and ii) grant such further relief as is just, fair, and equitable.

## DEMAND FOR JURY TRIAL

Interop hereby demands a jury trial on all issues triable of right by a jury in this declaratory judgment action and under the patent laws of the U.S.

Dated: February 1, 2013                           Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
2700 N. Military Trail, Suite 150
Boca Raton, Florida 33431
Telephone: (561) 361-6566
Facsimile: (561) 361-6466

By:  *s/ Peter A. Koziol*
Peter A. Koziol, Esq. (FBN 030446)
pak@assoulineberlowe.com
Eric N. Assouline, Esq. (FBN 106143)
ena@assoulineberlowe.com

*Attorneys for Plaintiff, Interop Technologies, LLC*

*Interop Electronics, LLC v. Acacia Corporation, et. al.*
Civil Action No. _____

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the methods referenced below this day February 1, 2013 on all counsel or parties of record on the service list indicated below:

By:   s/ *Peter A. Koziol*
       Peter A. Koziol

## SERVICE LIST

*Interop Electronics, LLC v. Acacia Research Corporation*
**CASE NO:** _____
**United States District Court, Southern District of Florida**

**Via Electronic Mail**

Harris D. Butler (VSB No. 26483)
Harris.Butler@butlerroyals.com
Rebecca H. Royals (VSB 71420)
Rebecca.Royals@butlerroyals.com
Butler Royals, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Tel: (804) 648-4848
Fax: (804) 548-6814

Timothy Devlin, Esq.
tdevlin@farneydaniels.com
Farney Daniels, LLP
1220 North Market Street, Suit 850
Wilmington, DE 19806

Xiang Yu, Esq.
ayu@farneydaniels.com
Farney Daniels, LLP
800 S Austing, Ave, Suit 200
Georgetown, TX 78626

*Attorneys for the Defendant*
*Intercarrier Communications, LLC*